IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JENNIFER WILLING** <br> 11221 Snethen Church Road <br> Salisbury, MD 21801 | * <br> <br> * | |
| *Plaintiff* | * | **Civil Case No.:** |
| **v.** | * | |
| **WICOMICO COUNTY, MARYLAND** <br> Serve: <br>     Paul D. Wilbur <br>     PO Box 910 <br>     Salisbury, MD 21803 | * <br> <br> * <br> <br> * | |
| *Defendant* | * | |

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## COMPLAINT

Plaintiff Jennifer Willing ("Ms. Willing") through counsel files this Complaint against her former employer, Wicomico County, Maryland ("the County"). Ms. Willing asserts claims for discrimination, failure to accommodate and wrongful termination in violation of the Rehabilitation Act (29 U.S.C. §§ 701, *et seq.*) (the "Rehab Act") and common law wrongful discharge. Ms. Willing contends she was harassed because of her disability, denied reasonable accommodations for her disability, and retaliated against for opposing the illegal and unethical conduct of her supervisors. Ms. Willing seeks awards of compensatory damages, punitive damages, attorneys' fees, and costs.

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §1331 in that this action asserts violations of rights secured by the laws of the United States.

2. Venue is proper in this Court in accordance with 28 U.S.C. § 1391(b), as the events giving rise to Ms. Willing's claims occurred in the District of Maryland, and there is no other district in which this action may be brought.

## PARTIES

3. Ms. Willing is a resident of Maryland. She was employed by the County during the events giving rise to this case.

4. The County is a charter county within the State of Maryland created for the provision of government services operating under Maryland law. The County employed Ms. Willing during the events giving rise to this case and is an employer under the Rehab Act.

## FACTS COMMON TO ALL COUNTS

5. Ms. Willing began working for the County in the Department of Public Works, Solid Waste Division in February 2017. Initially hired as a Scale House Attendant, Ms. Willing eventually was promoted to Fleet Coordinator. In her seven years of service, Ms. Willing was never disciplined and performed her duties without issue. Ms. Willing was successful in her employment.

6. Ms. Willing had been diagnosed with incontinence, a disability covered by the Rehab Act. For years Ms. Willing has carried a backpack with her containing emergency supplies and a change of clothes.

7. In December 2022, Heather Dear ("Ms. Dear") was appointed acting Superintendent of the Solid Waste Division and became Ms. Willing's new supervisor. From the outset, Ms. Dear cultivated an increasingly hostile, intimidating, and discriminatory atmosphere within Ms. Willing's workplace.

8. Ms. Dear would frequently discuss confidential personnel matters with Ms. Willing and boasted about terminating employees who disagreed with her management decisions; she often commented "let them fuck around and find out." These comments greatly exacerbated Ms. Willing's anxiety and made her feel as though she was one minor mistake away from losing her job.

9. On or about May 16, 2023, Ms. Willing discovered Department Supervisor Stephen Chamberlain ("Mr. Chamberlain") was apparently stealing abandoned property from the County landfill and misappropriating Department equipment and supplies. Ms. Willing reported Mr. Chamberlain's conduct to Ms. Dear, who assured Ms. Willing she would investigate the matter.

10. A few days later, Ms. Willing was ordered to attend a meeting with Ms. Dear and County Human Resources personnel Cory Huston ("Ms. Huston") and Donna O'Hara. Ms. Willing was told Mr. Chamberlain had filed a complaint against her for "spying and harassing him." Ms. Huston threatened Ms. Willing by telling her if the "spying and tattling" did not stop, she would be put in the County "Government Office Building washing windows." Ms. Willing found the experience intimidating and deeply humiliating.

11. Following the incident involving Mr. Chamberlain, Ms. Willing was victim to a number of harassing and retaliatory behaviors from Ms. Dear and other officials within the Public Works Department.

12. On May 18, 2023, Ms. Willing was informed by then-Acting Deputy Director of Public Works Heather Lankford ("Ms. Lankford") that due to "safety concerns," she would no longer be permitted to keep her emergency backpack at her desk. Instead, Ms. Willing would have to store her backpack in the breakroom lockers, located in a separate building from Ms. Willing's office. Practically speaking, in the event of an accident, Ms. Willing would have to exit her office building, cross an open-air parking lot in soiled clothes, and change in the shop bathroom.

13. Furthermore, the shop bathroom, which contains only a urinal and sink, is functionally a men's bathroom and is used almost exclusively by male employees.

14. To Ms. Willing's knowledge, no other office employee was required to store personal bags in the breakroom.

15. Due to the increased visibility of Ms. Willing's disability as a result of Ms. Lankford's "policy change," she suffered ridicule and name-calling at the hands of her male coworkers, including being called "pissy pants" and "dirty butt."

16. Ms. Willing complained about the loss of her accommodations and the bullying she received from her coworkers to Ms. Dear. Ms. Willing also told

Ms. Dear she noticed she was the employee who was told to adhere to this "policy change." Ms. Dear ignored Ms. Willing's complaints.

17. On several occasions thereafter Ms. Lankford falsely accused Ms. Willing of failing to pay invoices owed by the Department (despite this duty not being Ms. Willing's responsibility) and demanded Ms. Willing divulge her username and password.

18. Both Ms. Lankford and Ms. Dear routinely called, texted, and emailed Ms. Willing outside of work hours and demanded Ms. Willing return to the office to complete mundane tasks such as scanning and emailing documents.

19. These constant harassing and intimidating behaviors culminated in a meeting on July 26, 2023 with Ms. Dear and Supervisor Jessica Hunter. During the meeting, Ms. Dear accused Ms. Willing of insubordination for allegedly stating Ms. Lankford, as Acting Deputy Director, lacked the authority to act in certain non-specified capacities. Ms. Willing denied making the statements, and, indeed, the accusation was groundless.

20. Nevertheless, Ms. Willing received an official reprimand and was suspended without pay for three days.

21. At the conclusion of the meeting, Ms. Willing was also presented with a document titled "Termination of Merit Employee." When Ms. Willing asked for clarification, Ms. Dear quickly took the paper back, laughed, and quipped Ms. Willing was not supposed to receive it "yet."

22. Following the meeting, Ms. Willing reasonably concluded it was only a matter of time before her supervisors in the Department would concoct a

reason – no matter how spurious – to terminate her. Given this conclusion, coupled with the severe stress and anxiety she had endured as a result of Department officials' harassing conduct, Ms. Willing felt as though she had no choice but to resign, which she did by letter on August 4, 2023.

23. Despite her resignation, Ms. Willing continued to face harassment and intimidation from Department officials.

24. Ms. Willing regularly received text messages and phone calls from Ms. Dear and Ms. Lankford about Department matters.

25. In August 2023, Ms. Willing was falsely accused by Department officials of vandalizing Department equipment, despite having no evidence of her involvement. Ms. Willing was interviewed by law enforcement as to her involvement in the incident and the unfounded accusations caused Ms. Willing severe humiliation and damage to her reputation.

## CAUSES OF ACTION

### COUNT I: FAILURE TO ACCOMMODATE
### (29 U.S.C. §§ 701, et seq)

26. The facts alleged above are incorporated by reference.

27. Ms. Willing, as an individual with a disability, was entitled to reasonable accommodations for that disability. For years, Ms. Willing had enjoyed reasonable accommodations by being permitted to carry a backpack with a change of clothes and emergency cleaning supplies.

28. These reasonable accommodations were suddenly terminated when Ms. Lankford informed Ms. Willing she was no longer allowed to keep her

backpack on her person and instead had to store it in the breakroom lockers, which was located in a separate building from Ms. Willing's office.

29. The practical effect of Ms. Lankford's decision was to increase the visibility of Ms. Willing's disability and exposed her to verbal harassment, ridicule, and abuse from her coworkers.

30. Because of Ms. Lankford's decision, the County failed to accommodate Ms. Willing's disability and did so in reckless disregard of Ms. Willing's federally protected rights.

31. As a direct and proximate result of the County's illegal conduct, Ms. Willing has suffered lost wages and employment benefits.

## COUNT II: HOSTILE WORK ENVIRONMENT
## (29 U.S.C. §§ 701, *et seq*)

32. The facts alleged above are incorporated by reference.

33. The County created a hostile work environment when Ms. Lankford informed Ms. Willing she was no longer allowed to keep her emergency backpack on her person and instead had to store it in the breakroom lockers, which was located in a separate building from Ms. Willing's office.

34. Ms. Willing was the only person impacted by Ms. Lankford's "policy change;" none of Ms. Willing's non-disabled coworkers were required to store personal bags in the breakroom.

35. Consequentially, Ms. Willing's disability became substantially more visible and exposed her to verbal harassment, ridicule, and abuse from her coworkers.

36. The County's conduct was unwelcome and so severe or pervasive as to alter the conditions of Ms. Willing's employment.

37. As a direct and proximate result of the County's illegal discrimination, Ms. Willing has suffered lost wages and employment benefits.

## COUNT III: WRONGFUL TERMINATION
## (29 U.S.C. §§ 701, *et seq*)

38. The facts alleged above are incorporated by reference.

39. The County created a hostile and discriminatory work environment when Ms. Lankford instructed Ms. Willing she was no longer allowed to keep her emergency backpack on her person and instead had to store it in the breakroom lockers, which was located in a separate building from Ms. Willing's office.

40. Consequentially, Ms. Willing's disability became substantially more visible and exposed her to verbal harassment, ridicule, and abuse from her coworkers, not to mention the inherent humiliation in the ensuing incidents of incontinence.

41. The County constructively discharged Ms. Willing by subjecting her to discrimination and harassment so pervasive and severe Ms. Willing felt her only chance of escaping the abuse would be to resign. But for the County's illegal conduct, Ms. Willing would not have been constructively discharged.

42. As a direct and proximate result of the County's illegal conduct, Ms. Willing has suffered lost wages and employment benefits

## COUNT IV: WRONGFUL DISCHARGE

43. The facts alleged above are incorporated by reference.

44. While employed by the County, Ms. Willing uncovered a scheme perpetrated by her supervisor, Mr. Chamberlain, who stole and misappropriated Department of Public Works equipment. In opposition to Mr. Chamberlain's illegal activity, Ms. Willing reported his conduct to Ms. Dear.

45. In retaliation against Ms. Willing, the County accused Ms. Willing of insubordination, "tattling" on her superiors, and engaging in the very conduct she opposed. The County refused to accommodate Ms. Willing's disability. County officials threatened to demote Ms. Willing, reassign her to a menial and undesirable position "washing windows," and terminate her.

46. Ms. Willing's was so thoroughly demeaned, harassed, and intimidated by the County's conduct she realized it was only a matter of time before the County concocted a bogus reason to fire her, as indeed, Ms. Dear had "telegraphed" to her. The County constructively discharged Ms. Willing by inducing her to resign.

47. As a direct and proximate result of Defendant's illegal conduct and wrongful discharge, Ms. Willing has suffered economic losses and emotional distress.

## **PRAYER FOR RELIEF**

**WHEREUPON**, Plaintiff respectfully requests this Honorable Court grant the following relief:

A.   Enter a judgment in favor of Plaintiff and against Defendant for compensatory damages;

B.  Enter a judgment in favor of Plaintiff and against Defendant for punitive damages;

C.  Assess reasonable attorneys' fees and costs of suit in favor of Plaintiff and against Defendant; and

D.  Grant Plaintiff such other and further relief as the nature of her cause may warrant.

Respectfully Submitted,

/s/ Robin R. Cockey

ROBIN R. COCKEY, Fed. Bar No.02657
Cockey, Brennan & Maloney, PC
313 Lemmon Hill Lane
Salisbury, MD 21801
410-546-1750
Fax:  410-546-1811
rrcesq@cbmlawfirm.com
*Attorney for Plaintiff*