**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **JENNIFER WILLING,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | Civ. No.  MJM-25-1595 |
| | * | |
| **WICOMICO COUNTY, MARYLAND,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION</u>**

Plaintiff Jennifer Willing filed a Complaint against defendant Wicomico County asserting claims under the Rehabilitation Act and a wrongful discharge claim under Maryland law. ECF 1. Defendant moved to dismiss the wrongful discharge claim asserted in Count IV of the Complaint. ECF 5. Plaintiff filed a response in opposition to the County's motion, ECF 6, and the County filed a reply, ECF 7. No hearing is necessary to resolve the motion. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth below, the Court shall grant Defendant's motion and dismiss Count IV.

### I.      FACTUAL BACKGROUND

Jennifer Willing ("Plaintiff") began working for Wicomico County in the Department of Public Works, Solid Waste Division, in February 2017. *See* ECF 1 ("Compl.") ¶ 5. Wicomico County (the "County" or "Defendant") initially hired Plaintiff as a Scale House Attendant and eventually promoted her to Fleet Coordinator. *Id.* In Plaintiff's seven years of service, she was successful in her duties and never disciplined. *Id.*

In December 2022, Heather Dear was appointed Acting Superintendent of the Solid Waste Division, becoming Plaintiff's new supervisor. *Id.* ¶ 7. Ms. Dear frequently discussed "confidential

1

personnel matters with Ms. Willing and boasted about terminating employees who disagreed with her management decisions; she often commented 'let them fuck around and find out.'" *Id.* ¶ 8.

On or about May 16, 2023, Plaintiff discovered that Department Supervisor Stephen Chamberlain was "apparently stealing abandoned property from the County landfill and misappropriating Department equipment and supplies." *Id.* ¶ 9 Plaintiff reported Mr. Chamberlain's conduct to Ms. Dear, who assured Plaintiff that she would investigate the matter. *Id.*

A few days later, Plaintiff attended a meeting with Ms. Dear, Cory Huston, and Donna O'Hara. *Id.* ¶ 10. Ms. Hutson and Ms. O'Hara were County human resources personnel. *Id.* At the meeting, Plaintiff was informed that Mr. Chamberlain had filed a complaint against her for "spying and harassing him." *Id.* Ms. Huston told Plaintiff that if the "spying and tattling" did not stop, Plaintiff would be put in the County "Government Office Building washing windows." *Id.*

On May 18, 2023, then-Acting Deputy Director of Public Works Heather Lankford informed Plaintiff that, due to "safety concerns," Plaintiff would no longer be permitted to keep her emergency backpack at her desk, which contained emergency supplies and a change of clothes due to her incontinence diagnosis. *Id.* ¶¶ 6, 12. Moving forward, Plaintiff would have to store her backpack in the breakroom lockers, located in a separate building from Plaintiff's office. *Id.* "Practically speaking, in the event of an accident, [Plaintiff] would have to exit her office building, cross an open-air parking lot in soiled clothes, and change in the shop bathroom." *Id.* The shop bathroom contains only a urinal and is mostly used by male employees. *Id.* ¶ 13. No other employee was required to store personal bags in the breakroom. *Id.* ¶ 14.

Plaintiff alleges that Ms. Lankford's "policy change" increased the visibility of Plaintiff's disability, which resulted in ridicule at the hands of her male coworkers, including being called

2

"pissy pants" and "dirty butt." *Id.* ¶ 15. Plaintiff complained about the "loss of her accommodations and the bullying she received from her coworkers," but Ms. Dear ignored Plaintiff's complaints. *Id.* ¶ 16.

On several occasions Ms. Lankford accused Plaintiff of failing to pay invoices owed by the Department, despite this task not being her responsibility, and demanded that Plaintiff divulge her username and password. *Id.* ¶ 17. In addition, "[b]oth Ms. Lankford and Ms. Dear routinely called, texted, and emailed [Plaintiff] outside of work hours and demanded [she] return to the office to complete mundane tasks such as scanning and emailing documents." *Id.* ¶ 18.

On July 26, 2023, Plaintiff attended a meeting with Ms. Dear and Supervisor Jessica Hunter. *Id.* ¶ 19. At the meeting, Ms. Dear accused Plaintiff of "insubordination for allegedly stating Ms. Lankford, as Acting Deputy Director, lacked the authority to act in certain non-specified capacities." *Id.* Plaintiff denied making the statements. *Id.* Neverhtless, Plaintiff received an official reprimand and was suspended without pay for three days. *Id.* ¶ 20. Additionally, at the end of the meeting, Plaintiff was presented with a document titled "Termination of Merit Employee." *Id.* ¶ 21. When Plaintiff asked for clarification, Ms. Dear quickly took the paper back, laughed, and quipped that she was not supposed to receive it "yet." *Id.*

After the meeting, Plaintiff concluded that her employment would be terminated eventually. Based on that conclusion, coupled with the stress and anxiety she endured, Plaintiff "felt as though she had no choice but to resign, which she did by letter on August 4, 2023." *Id.* ¶ 22.

## II.   STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails

as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). "In alleging fraud or mistake," however, Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[T]he 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559 (4th Cir. 2013) (citation omitted). "The standard set forth by Rule 9(b) aims to provide defendants with fair notice of claims against them and the factual ground upon which they are based, forestall frivolous suits, prevent fraud actions in which all the facts are learned only following discovery, and protect defendants' goodwill and reputation." *Id.* (citation omitted).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not include "detailed factual allegations" to satisfy Rule 8(a)(2), but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable, and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S.

4

10, 11 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* "[T]ender[ing] 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (third alteration in *Iqbal*).

When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" the defendant's liability for the alleged wrong and the plaintiff's entitlement to the remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert denied*, 566 U.S. 937 (2012).

### III.   ANALYSIS

Defendant moves to dismiss the claim for wrongful discharge asserted in Count IV of the Complaint because Plaintiff was an at-will employee of the County. "The tort of wrongful discharge is one exception to the well-established principle that an at-will employee may be discharged by his employer for any reason, or no reason at all." *Wholey v. Sears Roebuck, et al.*, 803 A.2d 482, 488 (Md. 2002). The exception is rooted in the idea that "an employee who has been 'discharged in a manner that contravenes public policy' may 'maintain a cause of action for

abusive or wrongful discharge against his former employer.'" *Id.* (quoting *Adler v. American Standard Corp.*, 432 A.2d 464, 467 (Md. 1981), and collecting citations).

The Supreme Court of Maryland in *Wholey* "elaborated on the narrow public policy exception to the at-will employee doctrine it had earlier recognized." *Jackson v. Clark*, 564 F. Supp. 2d 483, 492 (D. Md. 2008) (citing *Wholey*, 803 A.2d 482). In *Wholey*, an at-will employee of a department store was discharged for investigating and reporting to his supervisor suspected criminal activity of a co-employee. *Wholey*, 803 A.2d at 489. The issue was whether the employee had a cause of action for wrongful discharge. In a plurality opinion, the court discerned from Maryland statutes defining "a misdemeanor offense for a person who harms or injures another's person or property in retaliation for reporting a crime[,]" "a clearly definable public policy goal" of protecting persons "*who report suspected criminal activity to the appropriate law enforcement or judicial authority* from being harmed for performing this important public task." *Id.* at 494 (emphasis in original). On this basis, the court recognized a new public policy exception to the employment-at-will doctrine, holding that an employee discharged for reporting suspected criminal activity to the proper authorities may bring a wrongful discharge claim. *Id.* at 494.

Defendant argues that Plaintiff's failure to report Mr. Chamberlin's conduct to an external law enforcement agency places Plaintiff outside the narrow exception recognized in *Wholey* and, therefore, her wrongful discharge claim fails as a matter of law. *See* ECF 7 at 2. Plaintiff concedes that her wrongful discharge claim is not justified by the exception newly recognized in *Wholey* because she did not report Mr. Chamberlin's conduct to an external authority, and that *Wholey* requires external reporting in "'whistleblower' style wrongful discharge cases[.]" ECF 6-1 (Pl. Opp'n) at 5–6.

Plaintiff argues, however, that her wrongful discharge claim falls within a different exception to the employment-at-will doctrine—namely, termination "for opposing or refusing to engage in" unlawful conduct. *Id.* at 6. According to Plaintiff, Mr. Chamberlin enriched himself, violating Maryland public policy against public employees using their position for personal gain. *See id.* at 6. Plaintiff's reliance on this theory is misguided.

To begin, Plaintiff cannot credibly characterize her wrongful discharge count as anything other than a whistleblower-type claim that she concedes requires reporting to external authorities under Maryland law. In Count IV of her Complaint, she alleges that she opposed "Mr. Chamberlain's illegal activity" by "report[ing] it to Ms. Dear[,]" and that, "[i]n retaliation . . . , the County accused Ms. Willing of insubordination, 'tattling' on her superiors and engaging in the very conduct she opposed." Compl. at ¶¶ 44–45. Under *Wholey*, a wrongful discharge claim by an at-will employee in these circumstances would be justified only if the employee reported the co-employee's criminal conduct to "to the proper authorities and [was] discharged as a result of this reporting." 803 A.2d at 501.

Plaintiff's reliance upon *Yuan v. Johns Hopkins University*, 157 A.3d 254 (Md. 2017), is misplaced. In *Yuan*, the Supreme Court of Maryland "recognized a wrongful termination claim where an employee refuses to engage in unlawful conduct and is terminated as a result." 157 A.3d at 267 (citing *Insignia Residential Corp. v. Ashton*, 755 A.2d 1080, 1087 (2000)). *Yuan* and related cases address circumstances in which an employee is terminated for refusing to commit an unlawful act or for fulfilling an affirmative legal duty. *See, e.g.*, *Magee v. DanSources Tech. Servs., Inc.*, 769 A.2d 231, 258 (Md. App. Ct. 2001) (employee alleged termination for refusing to commit healthcare fraud); *Bleich v. Florence Crittenton Servs. of Baltimore, Inc.*, 632 A.2d 463, 471 (Md. App. Ct. 1993) (teacher terminated after fulfilling a statutory duty to report suspected child

abuse).[1] Importantly, however, the *Yuan* court did not recognize a broader public policy permitting a wrongful discharge claim whenever an employee is terminated "*for opposing* . . . unlawful conduct," as Plaintiff suggests. *See* Pl. Opp'n at 5–6 (emphasis added).

Plaintiff's allegations do not fall within any exception to the employment-at-will doctrine recognized in *Yuan* and similar cases. She does not allege that she was fired for refusing to engage in unlawful conduct, nor that she was terminated for performing an affirmative legal duty imposed by statute.

In sum, Plaintiff fails to identify any exception to the employment-at-will doctrine that would justify the wrongful discharge claim she asserts in Count IV of the Complaint. Accordingly, this count shall be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the County's motion to dismiss is granted, and Count IV of the Complaint is dismissed without prejudice. A separate Order will issue.

  3/27/26 
Date

_____/S/_____
Matthew J. Maddox
United States District Judge

---

[1] The court in *Yuan* gave other examples of narrow exceptions, such as "when an employee is discharged for exercising his or her legal rights." 157 A.3d at 269 (citing *Watson v. Peoples Sec. Life Ins. Co.*, 588 A.2d 760, 767 (Md. 1991)).